UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

 Plaintiff,

v.               Case No. 07-20084

JIVAN YAKOOB,        HONORABLE AVERN COHN

 Defendant.

_____/

# MEMORANDUM MEMORIALIZING THE REASONING SUPPORTING THE ORDER DENYING DEFENDANT'S PRE-TRIAL MOTIONS (DOC. 49)

I.

This is a criminal case. Defendant is charged in a two-count indictment with violations of

- 18 U.S.C. § 2422(b) (Coercion To Commit Illegal Sexual Activity)

- 18 U.S.C. § 2423(b) (Travel With Intent To Engage In Illicit Sexual Conduct).

The background of the case is described in the Memorandum and Order Denying Defendant's Motion to Dismiss the Indictment (Doc. 20) filed January 4, 2009.[1]

The Court heard arguments on the following motions on January 22, 2009:

---

[1] The defendant's motion to dismiss was predicated on the following claims:

> (1) the crime was legally impossible to commit since the supposed "victim" was actually a law enforcement official, (2) the indictment constitutes impermissible "double jeopardy" in light of his previous guilty plea to related criminal charges in a Canadian court, and (3) the statutes at issue do not apply extraterritorially.

>Defendant's Combined Motion and Brief to Suppress Statements and Tangible Evidence (Doc. 29, June 19, 2008)
>
>Defendant's Combined Motion and Brief to Dismiss the Indictment Based upon Governmental Entrapment as a Matter of Law (Doc. 26, June 19, 2008)
>
>Defendant's Renewed Motion and Brief to Dismiss the Indictment for Violation of 18 U.S.C. § 4111 and the Extradition Treaty Between the United States and Canada[2] (Doc. 41, Dec. 16, 2008)
>
>Defendant's Combined Motion and Brief to Dismiss the Indictment Based upon Prosecutorial Vindictiveness, Misconduct and Violation of the *Petite* Policy (Doc. 41, Dec. 16, 2008)

Following argument the Court orally denied each of the pending motions[3] with a brief explanation and stated it would memorialize its reasons in a follow-up memorandum. This memorandum better explains the Court's reasons for denying the motions.

II.

The motion to suppress defendant's statement and the tangible evidence required an evidentiary hearing. The hearing extended over four (4) days.

The evidence at the hearing consisted of the testimony of the following witnesses:

- Windsor Detective Jason Belanger

- Windsor Police Officer Darcy Diotte

- Windsor Sergeant Maureen Rudell

---

[2] On July 28, 2008, the Court entered an order styled

>Order Denying Defendant's Motion to Dismiss the Indictment for Violation of 18 U.S.C. § 4111 and the Extradition Treaty Between the United States and Canada (Doc. 36)

for reasons stated on the record on the same day.

[3] The Court formally denied the motions in an order filed February 03, 2009 (Doc. 49).

- ICE Agent Mark Langenderfer

- ICE Agent Josh Edwards

- ICE Agent Michael MacBride

- Sinan Yakoob (brother of defendant)

and the following exhibits:

- Instant messages between defendant and "Cassie"[4] (in color)

- Instant messages between defendant and "Cassie" (in black and white)

- "Cassie's" Yahoo profile

- Two (2) images of defendant over web camera

- E-mail message with attachment containing two (2) pictures of "Cassie"[5]

- Videotape of defendant's interview with Windsor Police

- Administrative subpoenas sent to Yahoo and Wide Open West and Responses

- Windsor Police reports

- Record of proceedings in Her Majesty The Queen v. Jivan Yakoob in the Ontario Court of Justice

- Search warrant for 25016 Joanne Smith Drive, Warren, Michigan 48091 (Misc. Case No. 06-X-51062)

III.

A.

---

[4] Cassie is Belanger, the "13 year old girl" with whom the defendant exchanged chat messages.

[5] The pictures were of Rudell as a 13 year old.

The fact scenario that underlies the indictment and was described in the evidentiary hearing is also described in the transcript of the guilty plea of defendant on July 20, 2007, in the Ontario Court of Justice, particularly the statement of counsel for the Crown.

B.

In essence:

1.

On October 4, 2006, Belanger, a City of Windsor detective, logged into a chat room on the Internet. Defendant responded the same day. Carefully tracked, the transcript of the instant messages between Belanger, posing as a 13-year-old girl, and defendant establish that the initiative of engaging in a sexual encounter originated with defendant. Defendant in his messages displayed a desire to have a sexual relationship with a 13-year-old girl.

On November 9, 2006, Belanger contacted MacBride to alert him to the conversations he was having with defendant, who he knew was in the United States. Belanger asked MacBride to assist in identifying the owner of the computer with the screen name and Internet address being used by defendant.

MacBride issued administrative subpoenas to two Internet service providers (ISPs) to obtain the name and address of the owner of the computer being used by defendant. This cooperation between police agencies is a common occurrence.

On November 16, 2006, ISP Wide Open West responded to the subpoena with information that 20516 Joanne Smith Drive, Warren, Michigan, was the location of the computer defendant was using and that Internet service at the address was registered in the name of Sinan Yakoob.

In a conversation on November 16, 2006, defendant and "Cassie" agreed to meet on November 17, 2006, at a shopping mall in Windsor.

On November 17, 2006, ICE agents surveilled the residence at the Smith Drive address and observed defendant leaving the residence.

On November 17, 2006, MacBride went to Windsor and unofficially participated in a police briefing, and then went to the shopping mall where he observed defendant being arrested.

MacBride observed and listened to the Windsor police question defendant, and at the same time prepared a search warrant for the Smith Drive address. The search warrant was signed by a magistrate judge at 1:30 a.m. on November 18, 2007, and served at 10:00 a.m. the same morning.

2.

The Windsor police charged defendant on November 19, 2006, with a violation of the Criminal Code of Canada offense of "luring a child." Defendant pled guilty to the charge on July 20, 2007, and was sentenced to probation on July 23, 2007.

3.

The indictment in this case was returned by the grand jury on February 22, 2007.

4.

As to the search at the Smith Drive residence, ICE agents continued surveilling it the night of November 16, 2006. Around 10:30 p.m. the agents, having been advised of defendant's arrest in Windsor and concerned with the possible spoliation of the computer, talked to Sinan Yakoob, defendant's brother. The brother told the agents defendant lived with him and his wife. The agents obtained consent of the brother to search the bedroom

5

in the residence that was used by defendant. The consent was given after the brother was told that the agents were willing to wait until they got a search warrant. In such an event the agents said if they waited for a search warrant, they were entitled to search the whole house.

The agents were told where defendant's computer was. The agents examined the computer. Not having its password, they could not open it. The agents took the computer with them when they left the residence. The following morning, after the search warrant was issued, the agents searched the computer.

IV.

Turning now to the motions.

1.

Defendant was not entrapped into committing the crimes charged. As explained by the government in its response to defendant's motion to dismiss the indictment on the grounds of entrapment (Doc. 28, June 19, 2008):

> The question of entrapment focuses on whether law enforcement officials have implanted the criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who is already predisposed to do so. *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984). [Here] there is overwhelming evidence of defendant's predisposition to commit [the crime charged].
>
> In an effort to weed out internet sexual predators, Detective Belanger created an on-line persona and screen name. However, he did not provoke any activity that the defendant was not predisposed to undertake . . . [a]s . . . the Defendant initiated contact with "Cassie" via the internet. Within the first ten minutes of their *first* chat, Defendant asked "Cassie" about the size of her breasts and whether "anything sexual runs through [her] mind" when she sees a boy. During

6

>   this first conversation, Defendant also asked "Cassie" about her experience with boys, including oral sex. . . . *Defendant initiated every conversation that centered on sex. By doing so, he removed all doubt regarding his desire and intent to engage in illicit sexual activity.*
>
>   Defendant's screen name, "iwantmesomebooty," also made clear what he was seeking. . . . [H]is screen name demonstrated a predisposition to explicit sexual conduct and casual sex. During his chats with "Cassie," the Defendant routinely brought up and engaged in dialogue that was sexually graphic. . . .

2.

Defendant's assertion that the indictment of defendant runs afoul of 18 U.S.C. § 4111, the Extradition Treaty between the United States and Canada,[6] and the Petite Policy[7] are meritless.

Section 4111 is applicable only to offenders transferred from a foreign country for the express purpose of completing the execution of a foreign sentence in the United States. Cumming v. United States, No. 94-2070, 1995 WL 463097, *1 (1st Cir. Aug. 4, 1995). This is not the case here.

As to the Extradition Treaty, defendant was not extradited to the United States. He voluntarily returned from Canada to the United States after he was arrested.

As to the Petite Policy, which deals with dual prosecutions, the policy is not constitutionally mandated and confers no rights on an accused. United States v. Frederick,

---

[6] Dec. 3, 1971, T.I.A.S. No. 8237; Agreement Amending the Extradition Treaty, U.S.-Can., June 28–July 9, 1974 (entered into force Mar. 22, 1976).

[7] U.S. Dept. of Justice, "Dual and Successive Prosecution Policy ("Petite Policy")," U.S. Attorneys' Manual 9-2.031; see Petite v. United States, 361 U.S. 529 (1960).

7

583 F.2d 273, 273–74 (6th Cir. 1978); see also United States v. Snell, 592 F.2d 1083, 1087–88 (9th Cir. 1979).

3.

The claim of government misconduct and vindictiveness is also meritless. Essentially what defendant appears to say is that the manner in which ICE agents cooperated with the Windsor police in the investigation and arrest of defendant was such as to make the overall police effort a joint venture, and therefore the prosecution in Canada bars the prosecution in the United States, and that the constitutional protections of defendant in the United States encompass the conduct of the Windsor police.

First, contrary to the Court's initial impression, while the charge in Canada came first, the indictment here was returned months before defendant pled guilty in Canada.

More importantly, for constitutional protections to apply to defendant, the conduct of the Windsor police must "shock the conscience" or the ICE agents' role in Canada must have been "substantial." As explained in United States v. Vatani:

> Defendant's argument is foreclosed by Supreme Court and Sixth Circuit precedent. The Supreme Court has held that the Fourth Amendment does not extend to a search conducted outside the United States which involves an alien with no substantial connections to the United States, even where the search is performed by U.S. authorities. United States v. Verdugo-Urquidez, 494 U.S. 259, 261 (1990). . . .
>
> The two exceptions arise where (1) the foreign government's conduct is "shocking to the conscience" or (2) where U.S. agents participated in the foreign search or the foreign government was acting as the agent of its U.S. counterpart. United States v. Mitro, 880 F.2d 1480,1482 (1st Cir. 1989). Defendant does not suggest that the first exception applies. The second exception also referred to as the "joint venture" exception also does not apply.

> The second exception requires "substantial" involvement by U.S. agents in the search itself—as opposed to the overall investigation—and "substantial" means more than being briefed on the foreign government's plans or mere presence during the search. See, e.g., United States v. Angulo-Hurtado, 165 F. Supp.2d 1363, 1371 (N.D. Ga. 2001) (citing United States v. Behety, 32 F.3d 503, 511 (11th Cir. 1994) and United States v. Rosenthal, 793 F.2d 1214 (11th Cir. 1986)). Courts have found American officers' involvement in a search conducted by foreign officers sufficient to satisfy the joint venture exception where the American officers asked or urged the foreign officers to conduct the search, provided back-up protection while the search was conducted, and/or participated in the search itself. See, e.g., United States v. Barona, 56 F.3d 1087, 1094 (9th Cir. 1995) (finding that American agents indicated their interest in the movement of two of the defendants, requested the wiretaps, and provided interpreter); United States v. Peterson, 812 F.2d 486, 490 (9th Cir. 1987) (finding that U.S. agents were involved daily in translating and decoding intercepted transmissions and in advising foreign agents of their relevance); United States v. Hensel, 699 F.2d 18, 25 (1st Cir. 1983) (finding it unnecessary to decide whether the U.S. officers' involvement was sufficient to make the search a "joint venture" but finding the following facts supportive of such a finding: U.S. agents began the search of the target ship and asked Canadian officers to join them, an American DEA agent urged Canadian officers to seize the ship if it entered Canadian waters, an American ship showed firepower and provided back-up assistance during the Canadian's boarding of the ship, the Americans provided interpreters after the boarding, and an American officer participated in a second search of the ship).

No. 06-20240, 2007 WL 789038, *6–7 (E.D. Mich. Mar. 14, 2007); see also United States v. Vitar, No. S305CR621KMK, 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007).

The actions of the ICE agents, and particularly MacBride, in the investigation and arrest by the Windsor police of defendant based on his chat room conversation with "Cassie," and his travel to Windsor to meet with her, and finally his arrest in the shopping mall, do not come close to what is required to find that the prosecution of defendant by the

9

United States must be dismissed for violation of his constitutional rights. Nothing in what occurred in Windsor shocks the conscience. The role of the ICE agents in Windsor was not substantial. The description of the defendant's criminal conduct by Crown counsel in the Ontario Court of Justice following defendant's guilty plea describes the role of the ICE agents.

4.

Defendant's motion to suppress is directed to the statement he made to the Windsor police following his arrest, and to the taking possession of his computer later the same evening by ICE agents. The motion was filed prior to the evidentiary hearing and was not updated following the conclusion of the hearing.

To the extent the motion relies on the conduct of MacBride in obtaining defendant's name and address as owner of the computer, and where it was located, the motion to suppress has no merit. To the extent the motion relates to the statement to the Windsor police as a violation of defendant's Fourth Amendment rights it has no merit. To the extent the motion relates to the assertions

- it was in the defendant's private room inside his brother's residence

and

- defendant's brother was coerced into allowing the ICE agents to enter the residence and take possession of his computer,

the facts relating to the search do not support a finding that defendant's brother was coerced into consenting to the search. The brother's decision to allow the ICE agents to search the residence was voluntary. The brother clearly weighed the competing considerations, that is, denying the agents permission and waiting for the search warrant,

or alternatively letting the agents go into the bedroom and conduct a search. The brother had the apparent authority to consent. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). The bedroom door was unlocked and open. See United States v. Morgan, 435 F.3d 660, 663 (6th Cir. 2006). Moreover, it was inevitable that once the search warrant was obtained, the computer would have been obtained. United States v. Kimes, 246 F.3d 800, 804 (6th Cir. 2001).

Lastly, while the ICE agents took possession of the computer, its contents were not examined until after the search warrant was issued because they did not have its password. As to the search of the computer files, the search was as extensive as was "reasonably required to locate the items described in the warrant." United States v. Grinnell, 439 F.3d 1263, 1270 (6th Cir. 2006) (quoting United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982)).

5.

The defendant's claim of double jeopardy in violation of the Fifth Amendment has no merit. The United States and Canada are separate sovereigns. This is aside from the fact that it does not appear that the charge to which defendant pled guilty in Canada

> . . .between the 4th day of October in the year 2006 and the 17th day of November in the year 2006 at the City of Windsor in the said region did, by means of a computer system within the meaning of subsection 342.1(2) of the Criminal Code, communicate with a person who was or was believed to be under the age of fourteen years, for the purpose of facilitating the commission of an offence under Section 152 of the Criminal Code with respect to that person, contrary to Section 172.1, subsection (2) of the Criminal Code of Canada

is the same as either of the offenses charged in the indictment, so it cannot be said defendant is being tried and charged a second time for the same offense to which he had

11

been previously convicted.

As stated in United States v. Bernhardt, 831 F.2d 181, 182 (9th Cir. 1987):

> The Supreme Court has held repeatedly that successive prosecutions based on the same conduct are permissible if brought by separate sovereigns.

V.

The indictment in this case was returned on February 22, 2007. For almost two (2) years now defendant has been asserting a variety of defenses, none of which has any merit, to avoid trial. Particularly egregious are the efforts to interpose the extradition treaty between the United States and Canada and the Petite Policy as bars to prosecution. Also of the same order is the entrapment defense and the assertion that 18 U.S.C. § 4111 bar prosecution.

Imagination is no substitute for merit. This case is set for trial on February 23, 2009; the trial will go forward.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: February 3, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 3, 2009, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160