UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          CRIMINAL NO.: 07-20084

    Plaintiff,

v.          HON.  AVERN COHN

D-1 JIVAN YAKOOB,

    Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned attorneys, Barbara L. McQuade, United States Attorney, and Jeanine Jones, Assistant United States Attorney, respectfully submits this Sentencing Memorandum.  For the reasons provided below, the government recommends a sentence within the calculated guideline range of 46-57 months.

**I.**    **Background**

On October 4, 2006, Jason Belanger, a detective with the Windsor Police Department logged onto the internet in an undercover capacity.  The identity he assumed was that of a 13-year-old-girl named "Cassie," a child of living with her mother in Windsor, Ontario Canada.  "Cassie" used Yahoo! instant messenger, a popular online communication platform.

Not long after signing on as "Cassie," Detective Belanger received a message from an individual with the online ID "iwantmesomebooty," who initiated a conversation with "Cassie."  According to computer records, the online chat started around 8:03 p.m.

Within five minutes, the Defendant asked Cassie whether she had big boobs. Within ten minutes, the Defendant asked Cassie if anything sexual ran through her mind when she saw a cute boy. Withing twenty minutes, the Defendant asked Cassie if she had ever touched a boy's penis. Later, he said "im hoping I turn u on so u can say, well hurry up and come eat me out lol."(misspellings are in the original).

These online conversations proceeded over the course of several weeks. During it, the Defendant proposed a number of things to "Cassie," including masturbating for her over a web camera[1], meeting her in person, and explicit discussions about having sex with her. The Defendant talked about sex even as he acknowledged "im scared bout getting in trouble but I cant help but like ya, ur just so adorable." (misspellings are in the original).

On November 15, 2006, the Defendant engaged in concrete discussions about spending the weekend with Cassie. He arranged to meet her in Windsor at the Chapters Bookstore inside Devonshire Mall. The Defendant also suggested that they stay overnight at a local motel. On November 17, 2006, the Defendant solidified their plans and told Cassie to call him from a payphone inside the mall. He encouraged the meeting even though he could "get in trouble for this," since Cassie was "underage."

Cassie proceeded to the mall and talked to the Defendant on his cellular phone as he drove to their meeting place. The Defendant asked where she was and what she was wearing. She indicated that she had on a pink coat, to which he replied, "Turn around." At approximately 8:40 p.m., the Defendant entered Devonshire Mall and began walking

---

[1] On November 2, 2006, the Defendant exposed his penis to "Cassie" using a web camera. He then asked her if she liked his penis.

towards "Cassie's" decoy. Defendant was then apprehended by law enforcement without incident. Accordingly, Defendant Yakoob was charged with attempted coercion and enticement and travel with intent to engage in illicit sexual conduct, in violation of Title 18, United States Code, Sections 2422(b) and 2423(b), respectively.

On February 12, 2009, the defendant entered a guilty plea, pursuant to a Rule 11 Agreement, to travel with intent to engage in illicit sexual conduct. During his plea colloquy, the Defendant admitted that he traveled from Warren, Michigan to Windsor, Ontario Canada for the purpose of having sexual intercourse with someone he believed to be a 13-year-old girl.

## II.     Sentencing Guidelines Calculation

The applicable guideline range is 46 to 57 months based on a total offense level of 23 and a criminal history category of I. The government urges the Court to impose a sentence within the guideline range calculated by the Probation Department and the parties. Such a sentence would recognize the seriousness of defendant's offense conduct, the need to afford adequate deterrence to criminal conduct, and the defendant's criminal recidivism. *18 U.S.C. § 3553(a)*.

## III.    Argument

The Defendant's conduct warrants a sentence within the guidelines range of 46-57 months. Over the course of several weeks, the Defendant engaged in sexually explicit chats and activity with someone he believed to be a 13-year-old girl. The Defendant's screen name "iwantmesomebooty," made clear his intentions as he launched almost immediately into sexually laced discussions with Cassie. During those conversations, he

discussed engaging in oral and vaginal sex with someone the Defendant believed was a child. Further, the Defendant exposed his penis using a web camera in the hopes that it would turn Cassie on. He later conspired with and encouraged Cassie to lie to her mother so that he could spend the night with her at a motel. Clearly, the Defendant was prepared to commit a hands-on, sexual offense against a child. He intended to have sexual intercourse with someone he believed to be in the eighth grade – setting aside his knowledge that he was committing a crime.

In light of the Defendant's pernicious conduct, the sentence this court imposes must be in the context of the Guidelines and the unique context of the laws and policy statements that pertain to crimes against children. 18 U.S.C. § 3553(a) specifically lists policy statements issued by the Sentencing Commission as a key consideration in sentencing. Child sexual abuse and exploitation crimes are unusual in the degree to which both Congress and the Sentencing Commission have openly expressed their disfavor of non-Guidelines sentences. Specifically, any departure from the sentencing guidelines in a child sex case (including travel with intent to engage in illicit sexual activity), is governed by U.S.S.G. § 5K2.0(b).[2] That section, which refers to a parallel statute at 18 U.S.C. § 3553(b)(2), provides that the sentencing court may only impose a sentence below the range established by the applicable guidelines if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that (1) has been affirmatively and specifically identified as a permissible ground for a downward

---

[2] Notably, §5K2.0 is explicitly marked as a "Policy Statement."

departure in the sentencing guidelines or policy statements contained therein; (2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and (3) should result in a sentence different from that described. The provision then states:

> "The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted."[3]

Although § 3553(b)(2)(A) must be understood as advisory in light of the holdings of the United States Supreme Court in United States v. Booker, 543 U.S. 220 (2005), Kimbrough v. United States, 128 S.Ct. 558 (2007), and Gall v. United States, 128 S.Ct 586 (2007); see also United States v. Hecht, 470 F.3d 177 (4th Cir. 2006) (excising the mandatory language from the statute), it nonetheless stands as a clear expression of Congress' policy judgments with respect to sentencing in child pornography and child exploitation cases. The Fourth Circuit has made clear that even after the Guidelines were rendered advisory by Booker, "in the course of selecting an appropriate sentence, [a district court] ought to give respectful attention to Congress' view that [child pornography crimes] are serious offenses deserving serious sanctions." Hecht at 182; See also United

---

[3] Commentary later added to §5K2.0, n.4(B)(I), further clarifies this by stating that the standard for a downward departure in child crimes and sexual offenses differs from the standard for departures in other cases, and that the basis for such a downward departure should be affirmatively and specifically identified as a ground for departure under Chapter 5, Part K.

States v. Johnson, 2007 WL 2050986 (4th Cir. 2007).  In short, although the Guidelines are not mandatory, Congress and the Sentencing Commission have plainly taken a dim view of downward sentencing departures or variances in child exploitation cases except under narrowly defined circumstances.  The significance of explicit Congressional direction regarding sentencing was acknowledged in Kimbrough, which cited 18 U.S.C. §994(h) as an example.  Kimbrough at 561. Any motion for a sentence below the advisory guidelines range must be considered in the context of the unusually strong terms in which Congress and the Sentencing Commission have addressed sentencing in child sex cases.

With respect to the instant matter, the Defendant has earned a sentence within the calculated guidelines range.  He willingly engaged in a pattern of activity that brought him from cyberspace, across an international border, to Devonshire Mall where he believed a child was waiting.  There is no doubt the Defendant intended to have sex with a minor.  His obscene language, lewd behavior over a web camera, and travel demonstrate his sinister ambition to have intercourse with an under-aged girl.  The only reason he did not complete a sexual act was because law enforcement intervened.

The defendant's Sentencing Memorandum, understandably, takes a minimalist approach to describing his criminal conduct.  Let us be perfectly clear about that conduct: Jivan Yakoob was, over a two month period, engaged in a pattern of behavior designed to seduce a child into sexual activity.  For this, the Defendant offers nothing resembling a coherent explanation or justification.  What little the Defendant does offer does not provide any genuine distinction between his case and the cases of other similarly situated defendants, and can be dealt with quickly.  As the Court is well aware from its own

experience, there is nothing unusual about a defendant in a child exploitation case having no prior criminal history (an item already accounted for in the guidelines in any event), or having participated in healthier, more positive activities in other areas of his life, or having supportive family members willing to help him.[1]  There is also nothing unusual about the court's ability to set strict conditions of release for this defendant after his sentence expires. It can do so for any similar defendant.

As to the Defendant's acceptance of responsibility, it is true that after minimizing his behavior, the Defendant chose to admit his guilt and take responsibility for his crimes early in the process, and that this conduct should benefit him.  That benefit, however, can be fully and properly accounted for by the 3-level reduction in offense level that has been credited to the defendant and by the court's consideration of where within an advisory range the defendant's sentence should fall.  There is nothing so unusual or extraordinary about the defendant's acceptance of responsibility that the demands of justice require more than this.

This leaves only the relatively unremarkable report of Mr. Rosenberg.  There are, of course, subject items in the report that are to the Defendant's credit, including his apparent interest in treatment and his cooperation with the evaluation process.  Like the other considerations presented by the Defendant, however, cooperation in evaluation and

---

[1] It should be noted, especially in light of 18 U.S.C. §3553(a)(4), that the Guidelines in Section 5H1.6, while not binding, expressly discourage departures on the basis of family ties and responsibilities, and calls out child exploitation crimes for special discouragement, saying that "[for child exploitation crimes], family ties and responsibilities and community ties are not relevant in determining whether a sentence should be below the applicable guideline range."

treatment and the potential for future improvement are not especially unusual and do not separate his case from the bulk of other defendants who have committed similar crimes.

Though he has availed himself to treatment and may now regret his actions, there is nothing remarkable about the Defendant or his case.  Accordingly, there is no reason to vary his sentence for a category of crimes called out for special treatment in policy statements from Congress and the Sentencing Commission.  A sentence within the advisory Guidelines range properly accounts for the Defendant's circumstances, as well as his post-arrest behavior, without doing violence to the other 3553(a) factors.

### IV. Conclusion

For the aforementioned reasons, the Defendant should be sentenced within the range of 46-57 months.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

s/JEANINE M. JONES (P55429)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9597

Date: January 19, 2010                    jeanine.m.jones@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF-system which will send notification of such filing to the following: John Freeman, Email: formerfedlawyer@hotmail.com, and I hereby certify

that I have mailed by United States Postal Service the paper to the following non-ECF participants:  None  .

                                            s/Jeanine M. Jones (P55429)
JEANINE M. JONES
Assistant United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9597
E-mail: jeanine.m.jones@usdoj.gov